## STEVENS v. R. O'BRIEN & CO.
### No. 2721.

Circuit Court of Appeals, First Circuit.
Jan. 3, 1933.

Harry Kisloff, of Boston, Mass., for appellant.

Sawyer, Hardy, Stone & Morrison, of Boston, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a judgment of the District Court of Massachusetts. The appellant seeks to recover for injuries received as a seaman on one of appellee's fishing boats, and for "maintenance and cure."

He brings his action under section 33 of the act of 1920, known as the Merchant Marine or Jones Act (41 Stat. 1007 [46 USCA § 688]), which has furnished an additional but alternative remedy to that provided under the general maritime law, and in the form of a common-law action, in which a seaman injured at sea is entitled to a jury trial, and may recover indemnity, not only for injuries due to an unseaworthy vessel or defective equipment, but for injuries due to the negligence of one in authority over him, or to any defective condition of the vessel. Pacific S. S. Co. v. Peterson, 278 U. S. 130, 49 S. Ct. 75, 73 L. Ed. 220; Kongs v. Oceanic & Oriental Nav. Co. (D. C.) 47 F.(2d) 650; Howarth v. United States Shipping Board, etc. (C. C. A.) 24 F.(2d) 374. After the opening of the appellant's case to the jury, the court ordered the jury to bring in a verdict for the defendant on the ground that the appellant had assumed the risk of alleged defective equipment.

The appellant in his declaration alleges that his injuries were caused by the defendant's failure to provide him with a reasonably safe place in which to work, to furnish him with suitable and safe means and appliances for the performance of his work, and to maintain them in proper condition, and properly to inspect such means and appliances; that the vessel by reason thereof was unseaworthy, and because of his injuries the appellant became sick and incurred large expenses for medical care and other costs.

Under a second count the appellant seeks to recover for "maintenance and cure," which may be joined with a count for negligence under section 33 of the Merchant Marine Act; Kongs v. Oceanic & Oriental Nav. Co., supra; Pacific S. S. Co. v. Peterson, supra, page 138 of 278 U. S., 49 S. Ct. 75.

The appellee in his answer denied all the allegations in the declaration, and set up contributory negligence as a defense. The latter, however, is not relied on. Before the case was opened to the jury, the defendant filed a motion for leave to amend its answer by pleading the defense of assumption of risk, which was denied, as the record states, on the ground that this defense was not open under the Merchant Marine Act.

In opening the appellant's case, his counsel stated the facts on which the action was based, viz., that the appellant shipped on the defendant's fishing vessel as a cook; that alongside his bunk in the room provided for sleeping quarters was a coal stove to furnish heat; that the stove was lacking in covers, which had become worn out and were not replaced; that the stove was otherwise defective in that its drafts and flue were imperfectly constructed, and the means for carrying off the smoke and coal gas were inadequate and defective; that as a result smoke and coal gas filled the room, and he became sick and nauseated, and experienced dizziness, vertigo, and headaches, lost his appetite, came home in May a "wreck" having lost eighteen pounds, and changed from a "robust, healthy man to a thin, weak, tired man, suffering from coughs and headaches." While at sea, he complained about the condition of the stove, but nothing was done to remedy the alleged defects. He was at sea nearly a month in the spring of 1931, or from April 19th to May 14th, but returned to the home port once during this time. How long after April 19th, or whether on the return from the first trip the danger from the defective condition of the stove had become apparent and was appreciated by the plaintiff,

does not appear. Counsel also stated in his opening that two doctors would testify that his illness was due to coal gas poisoning.

Counsel were called to the bench for a conference after the opening. The record does not disclose that any further admissions of facts were made than were stated in the opening of counsel, except that the sleeping quarters were in the forecastle.

The District Judge ruled that the plaintiff, upon the facts stated in counsel's opening, had assumed the risk and directed a verdict for the defendant.

While the defense of assumption of risk is open to the defendant under the Merchant Marine Act, Zinnel v. United States Shipping Board, etc. (C. C. A.) 10 F.(2d) 47, The Calvert (C. C. A.) 51 F.(2d) 494, and a contractual assumption of risk need not be pleaded, an assumption of risk not incident to the employment, which only becomes apparent after the employment begins, must be pleaded as a defense under Massachusetts practice; Souden v. Fore River Ship Building Co., 223 Mass. 509, 112 N. E. 82; Cuozzo v. Clyde Steamship Co., 223 Mass. 521, 112 N. E. 215; Southern Railway Company v. Lloyd, 239 U. S. 496, 36 S. Ct. 210, 60 L. Ed. 402.

The amendment to the answer setting up assumption of risk as a defense should have been allowed, but having been denied, on the ground that the defense of assumption of risk was not available under the Merchant Marine Act, counsel for the appellant had no reason to state in his opening any facts or make any explanation that might relieve the plaintiff of the burden of having assumed the risk. The record does not disclose that this defense was the subject of the colloquy at the bench following his opening statement, but though it may have been, he had a right to rely on the refusal by both judges to allow an amendment of the answer permitting such a defense.

It is clear, we think, that there was no contractual assumption of risk. A defective stove in the sleeping quarters of the crew is not one of the ordinary hazards of employment on a fishing schooner. It was, therefore, as the defendant assumed, one of the risks that became known after employment begins, and must be pleaded. Until pleaded, this defense was not open to the defendant, and in fairness to the plaintiff and in order that he may meet the issue, if he can, the case must go back for an amendment to the defendant's answer and the consideration of such evidence as the plaintiff has in support of his allegations and bearing on this issue.

The court below, unless indirectly by ordering a verdict for the defendant, did not pass on the second cause of action to recover for maintenance and cure, which a seaman is entitled to have, in addition to his wages as a contractual right; Pacific S. S. Co. v. Peterson, supra, and whether his injuries were due to negligence or accident, Carlisle Packing Co. v. Sandanger, 259 U. S. 255, 258, 42 S. Ct. 475, 66 L. Ed. 927; The Osceola, 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760; Chelentis v. Luckenbach Steamship Company, Inc., 247 U. S. 372, 38 S. Ct. 501, 62 L. Ed. 1171. Both parties, however, appear to have assumed that the court denied the right of recovery on both counts, though it is doubtful whether the assignment of errors is sufficiently specific under the rules of this court, if objection were made, to raise an issue as to the second count, but under rule 11 of this court we think we may dispose of this issue as though it was expressly passed on and was properly raised in the assignment of errors.

While counsel made no statement that the appellant could not perform his work, or that he requested any medical attention either at sea or at the completion of the voyage and was refused, the appellant was not obliged to volunteer to go to the Marine Hospital for treatment, though he could not refuse to go if the offer of treatment there was made by his employer; Stewart v. United States (D. C.) 25 F.(2d) 869; Marshall v. International Mercantile Marine Co. (C. C. A.) 39 F.(2d) 551. A seaman, in order to recover for maintenance and cure, is not obliged to notify the owner of an obvious need of medical attention in order that the owner may provide it at a marine hospital. Saunders v. Luckenbach Co., Inc. (D. C.) 262 F. 845, 846.

If the facts stated in the opening statement of counsel are assumed to be true, as the court must so assume in ordering a verdict for the defendant, we think there was sufficient evidence under this count to go to the jury tending to show that the appellee was obviously in need of medical treatment on his return from the second trip. Counsel described him as a "wreck," having lost eighteen pounds, after having suffered from dizziness, vertigo, and headaches during the voyages, and was changed from a robust, healthy man to a thin, weak, tired man, suffering from coughs and headaches, and as a result he had to remain in bed most of the time for three weeks and was unable to work

for eight months; Willey v. Alaska Packers' Ass'n (C. C. A.) 18 F.(2d) 8; and that two physicians would testify that his condition was due to inhaling coal gas.

The opening statement of counsel contained no admission of any facts that showed the applicant was not entitled to reasonable medical treatment for a reasonable time after the completion of the voyage, and at the expense of the owner. On the contrary, taking the facts stated by counsel as true, there was evidence from which a jury might find that his condition at the end of the second voyage was such that the master of the vessel must have known of the seaman's immediate need of medical treatment, without any request for it being made. As agent of the owner, knowledge of the master is knowledge of the owner.

In case of injury or illness during the voyage, a seaman has a right to "maintenance and cure" arising out of his relation to the vessel. The Montezuma (C. C. A.) 19 F.(2d) 355, 356; or as Judge Story said in Harden v. Gordon, 11 Fed. Cas. 480, 481, No. 6,047, it is a part of the contract for wages, "a material ingredient in the compensation for the labour and services of the seamen"; or as Mr. Justice Gray said in The A. Heaton (C. C.) 43 F. 592, 595, it is "grounded solely upon the benefit which the ship derives from his service, and having no regard to the question whether his injury has been caused by the fault of others or by mere accident." A failure to demand it of the owner at the end of the voyage has a bearing only on his good faith and the justness of his claim; Saunders v. Luckenbach Co., Inc., supra (D. C.) 262 F. 846; The Ball Brothers (D. C.) 35 F.(2d) 261. That assumption of risk is a defense under the plaintiff's claim in tort, but not to his claim for maintenance and cure arising out of his contract of employment as a seaman. See The Ipswich (D. C.) 46 F.(2d) 136. We think the plaintiff should have been allowed to present his evidence to the jury on both issues.

The judgment of the District Court is reversed with costs of this court, and the case remanded to the District Court for further proceedings not inconsistent with this opinion.

MORTON, Circuit Judge (dissenting).

As to maintenance and cure I think it devolved upon the plaintiff to request it. There was no claim that he was mentally incapacitated or unable to look out for himself when the trawler reached port. If he wanted to be cared for and cured at the expense of the vessel, he should have said so and gone to the Marine Hospital. I do not think it devolved upon the vessel to take the initiative by offering to send him to the hospital. He evidently preferred to go home and be cared for there. Of course, he was quite free to do so; but it does not seem to me that the vessel was obligated to pay the bills which he so contracted.